WAUKEEN Q. McCOY, ESQ. (SBN: 168228)
McCOY LAW FIRM, P.C.
251 Post Street, Suite 301
San Francisco, CA. 94108
Telephone: (415) 675-7705

Attorney for Plaintiff,
ZACHARY PELLE

# UNITED STATES DISTRICT COURT
## CENTRAL DISTICT OF CALIFORNIA

| | |
|---|---|
| ZACHARY PELLE, an individual, <br><br> Plaintiff, <br><br> v. <br><br><br> THE TREVOR PROJECT; and DOES 1-10, inclusive; <br><br><br> Defendants | Case No.: 2:22-CV-02680 <br><br> **COMPLAINT FOR DAMAGES:** <br><br> **1.  SEX DISCRIMINATION--  Cal. Govt. Code § 12940 *et seq.*** <br><br> **2. SEX DISCRIMINATION—Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*** <br><br> **3. RACE DISCRIMINATION—Cal. Govt. Code § 12940 *et seq.*** <br><br> **4. RACE DISCRIMINATION—Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*** <br><br> **5. SEXUAL ORIENTATION DISCRIMINATION—Cal. Govt. Code § 12940 *et seq.*** <br><br> **6. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY** <br><br> **7. INTENTIOANL INFLICTION OF EMOTIONAL DISTRESS** <br><br> **8. RETALIATION—Cal. Govt. Code § 12940 et seq.** <br><br> **9. RETALIATION—Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Zachary Pelle (hereinafter "Plaintiff" or "Mr. Pelle") complains of the named Defendants, inclusive for the following claims and causes of action:

## INTRODUCTION

1.  This is an action for damages for Sex Discrimination, Race Discrimination, Sexual Orientation Discrimination, and Retaliation under the California Fair Employment and Housing Act (hereinafter "FEHA") and Title VII of the Civil Rights Act of 1964 (hereinafter Title VII), as well for Wrongful Termination in Violation of Public Policy, and Intentional Infliction of Emotional Distress.

## JURISDICTION AND VENUE

2.  Jurisdiction is appropriate in the Central District of California pursuant to 28 U.S.C. § 1331.

3.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343.

4.  Venue is proper in this Court under 28 U.S.C. §1391(b), and §1391(b)(2) because Defendants reside in, and/or all incidents, events, or occurrences giving rise to this action occurred in, the County of Los Angeles in the State of California.

## THE PARTIES

5.  Plaintiff Zach Pelle is a cisgender heterosexual Caucasian male residing in Los Angeles, California. Plaintiff was formerly employed by Defendant The Trevor Project as a Crisis Worker from February 2, 2013 to November 5, 2020.

6.  Defendant The Trevor Project (hereinafter "Defendant") is a non-profit LGBTQ+ organization located in West Hollywood, California, which provides suicide prevention and crisis intervention services to LGBTQ+ youth.

COMPLAINT FOR DAMAGES

7.   Plaintiff is unaware of the true names and capacities of Defendants, whether individual, corporate, associate, or otherwise, sued herein as, DOES 1 through 10, inclusive, and Plaintiff therefore sues these Defendants by such fictitious names. Plaintiff is informed and believes, and based thereon alleges, that each of these fictitiously named Defendants is responsible in some manner for the unlawful acts, omissions, occurrences, events, and happenings alleged herein and that Plaintiff's injuries as alleged herein were proximately caused by such aforementioned Defendants. When Plaintiff ascertains the true names and capacities of Doe Defendants 1 through 10, Plaintiff will seek leave of the Court to amend this Complaint to set forth the true names and capacities of such Defendants.

8.   Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein, each of the Defendants was and is the agent, employee, and servant of each other defendant, and committed the occurrences, unlawful acts, and omissions complained of herein while acting within the scope of such agency, employment, and servitude. Moreover, each of the Defendants conspired and acted in concert with one another, and/or agreed to conspire and act in concert with one another to commit the unlawful and unfair acts and/or omissions alleged herein, thus violating Plaintiff's rights. The acts and/or omissions of Defendants was or is in furtherance of said conspiracy and, thus, attributable to each Defendant.

## STATEMENT OF FACTS

9.   Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1 through 8 above.

10.  In February of 2013, Plaintiff was hired by The Trevor Project as a Crisis Worker. As a Crisis Worker, Plaintiff was tasked with answering calls on The Trevor Lifeline, an LGBTQ+ national suicide prevention lifeline.

COMPLAINT FOR DAMAGES

11.  During his employment, Plaintiff was the only cisgender heterosexual Caucasian male working at The Trevor Project.

12.  Plaintiff enjoyed his work for The Trevor Project for his first six years of employment and routinely received raises and positive performance evaluations.

13.  In April of 2019, The Trevor Project brought in a new Chief Clinical Operations Officer, Tia Dole.

14.  Tia Dole (hereinafter "Ms. Dole"), a female person of color, as the Chief Clinical Operations Officer, was in charge of multiple departments, including the one in which Plaintiff worked.

15.  During her first meeting with Plaintiff, Ms. Dole shared with Plaintiff that she wanted to make the organization more accurately reflect those that The Trevor Project served. Ms. Dole gave the example of a 16-year-old single mother, without regard to how extremely rare such a caller was.

16. Within her first 2 months, Ms. Dole fired two white male senior managers under the pretext of "restructuring", then posted openings for similar positions to the ones they held, but with new titles. The two senior managers terminated agreed to take the severance packages they were offered in exchange for giving up their right to sue.

17.  In July of 2019, Sam Arpino (hereinafter "Ms. Arpino"), a queer female person of color, was hired as the new Director of People Operations at The Trevor Project. In August of 2020 Ms. Arpimo was promoted to Senior Director of People Operations.

18.  While employed as the Director of People Operations for The Trevor Project, and at times within days of having meetings with the Plaintiff, Ms. Arpino posted publicly on social media using adjectives like "white" or "straight" derogatorily in a way which one could

4

substitute the word "bad" and still retain the same meaning. She also displayed her membership to a private online group called "Disrupting whiteness" and said that she wanted to "de-colonize people operations".

19. The Trevor Project leadership required all employees to participate in diversity and inclusion training which Plaintiff completed. Plaintiff noticed that the concepts in the training were consistently applied to virtually everyone within the company other than Plaintiff.

20.  Plaintiff's coworker K.J. Tousley, a transgender non-binary individual who uses they/them pronouns, was looking for a roommate and stated, "No offense Zach, but I could never live with someone straight." KJ and others often exhibited similar behavior which would be termed a "micro-aggression" if done to a non-straight-white-male.

21.  Plaintiff's coworker and eventual supervisor Juno Pinder (hereinafter "Ms. Pinder"), a lesbian woman, stated she hated men on multiple occasions, but told Plaintiff that he was "one of the good ones".

22.  In July of 2018, Cristina Ciprian-Matthews (hereinafter "Ms. Ciprian-Matthews"), a female person of color, was hired as Chief People Officer. Ms. Ciprian-Matthews strategically reevaluated the employee pay raise, causing a reduction in Plaintiff's yearly percentage, while other employees received no such reduction.

23.  After Plaintiff expressed concerns via email to Ms. Ciprian-Matthews about how his raise was calculated, including how he believed the calculations were incorrect, Chief People Officer Ms. Ciprian-Matthews scheduled an over-the-phone meeting to respond.

24.  During the meeting, when Plaintiff pointed out that the new policies felt targeted since they only negatively affected him, Ms. Ciprian-Matthews stated that she found it offensive that Plaintiff felt targeted. Ms. Ciprian-Matthews held power over Plaintiff's job and future within

5

COMPLAINT FOR DAMAGES

1    the organization, leaving Plaintiff with no other recourse than to apologize and politely ended the

2    conversation.

3        25.  After this conversation, Plaintiff's enrollment in Health Insurance was delayed for more

4    than 9 months while others who became eligible at the same time reported having no issues and

5    that they were enrolled immediately. Plaintiff similarly received his work-issued laptop weeks

6    after others who became eligible at the same time.  Plaintiff also never received a new laptop

7    cover which he was told was mandatory (Plaintiff's supervisor at the time gave Plaintiff his old

8    broken laptop cover to use), and he was never enrolled in the retirement plan he was promised

9    he would receive when he moved to full time.

10       26.  Plaintiff was bothered by the treatment he was receiving and shared that he felt targeted

11   with his supervisor Patricia Noel, a female person of color. Plaintiff's coworker, Marvin Novelo,

12   gay male person of color, having overheard the conversation, interjected that it was because

13   Plaintiff was a straight white man. Patricia Noel excused herself from the conversation and

14   scheduled a meeting with Plaintiff.

15       27.  Much to Plaintiff's dismay, the meeting was not to address Plaintiff feeling targeted, but

16   to admonish the Plaintiff for not voicing dissent in response to the coworker's statement that

17   Plaintiff was being targeted because he was a straight white male. Plaintiff explained that he did

18   not believe the statement was false. In response, Patricia Noel (hereinafter "Ms. Noel") informed

19   Plaintiff that his complaints were unjustified, explaining that the world was made for him. Ms.

20   Noel explained that Plaintiff feeling targeted minimized her experience as an African American

21   woman.

22       28.  In August of 2019, Danielle Ehsanipour, a person of color who is gender non-

23   conforming, who uses they/them pronouns, was hired as the Director of Lifeline at The Trevor

6

COMPLAINT FOR DAMAGES

Project. Mx. Ehsanipour targeted Plaintiff without clear motive, made false statements, and mischaracterized Plaintiff's actions.

29.  Under the Trevor Project's new management team of Ms. Dole, Ms. Arpino, Mx. Eshanipour, and Ms. Ciprian-Matthews, all new supervisor positions, hired or promoted, were exclusively non-male people of color.

30. Plaintiff's white male collegues Holden Streetly and Rick Turpin were regularly denied promotions.

31. Within 60 days of Mx. Eshanipour's promotion to Director of Lifeline, Plaintiff was placed on a 30-day Performance Improvement Plan that contained vague criticism without citing any specific evidence or offering supporting evidence of the criticism contained therein.

32. Despite the disciplinary procedure being clearly outlined in the employee handbook as: (1) Verbal warning; (2) Written warning; (3) Performance Improvement Plan; and (4) Termination, Plaintiff was placed on a Performance Improvement Plan without ever receiving a verbal or written warning.

33. Mx. Ehsanipour encouraged Plaintiff to ask questions regarding anything that the Performance Improvement Plan did not make clear, but when Plaintiff did, he was told Mx. Ehsanipour did not have time to provide a meaningful response.

34. When Plaintiff asked questions about the necessity of the Performance Improvement Plan, Mx. Ehsanipour objected to Plaintiff's questions. During this process Plaintiff's supervisor, Juno Pinder, admitted that it seemed like an abuse of power, but also confided that she felt that her job would be in jeopardy if she continued to defend Plaintiff.

35.  On June 11, 2020, Plaintiff complained to Senior Director of People Operations Sam Arpino that Plaintiff's identity did not receive the same protection as other identities. Plaintiff

COMPLAINT FOR DAMAGES

asked if members of People Operations participating in a meeting had spoken negatively about straight white men, but did not receive a response. No corrective action was taken. Ms. Arpino inquired why didn't Plaintiff not just go work somewhere else.

36. In July 2020, Julie Lemus and Bria Fields, both female persons of color, were hired as supervisors at The Trevor Project. Lemus introduced herself to the crisis worker team by sharing her past work experience, followed by stating, "I'm interested in helping people who look like me."

37. On or about September 21, 2020, Plaintiff submitted a document to Sam Arpino detailing examples of discrimination enacted through the workplace bullying he had been subjected to, including but not limited to exaggerated criticism, gaslighting, intimidation, and abuses of power by Director of Lifeline Department Danielle Ehsanipour.

38. Ms. Arpino informed Plaintiff that his claims would be investigated and that he would receive an update.

39. In October 2020, Bria Fields informed Plaintiff that his feedback from post-call surveys had even excellent, and Ms. Fields asked Plaintiff to write up protocol to use regarding third party callers, which Plaintiff promptly completed.

40. On or about October 26, 2020, Plaintiff interviewed for a promotion to the Crisis Services Manager of Lifeline Counselors position, and was interviewed by a recruiter. During the interview, the recruiter mentioned that Danielle Ehsanipour, who had previously bullied and harassed Plaintiff, was in charge of the hiring process for the position.

41. On or about November 5, 2020, Sam Arpino and Danielle Ehsanipour scheduled a meeting with Plaintiff. At the start of this meeting Sam Arpino communicated to the Plaintiff that she felt positively about an update she had regarding the results of her investigation into his

COMPLAINT FOR DAMAGES

complaint. However, instead of providing specific details, she informed Plaintiff that he was being terminated. Plaintiff was informed by Ms. Arpino and Mx. Ehsanipour that he was being terminated for allegedly engaging in "unprofessional communication."

42.  No results regarding the results of any investigation into Plaintiff's complaint were ever provided to Plaintiff.

43.  When Plaintiff asked for specific instances of when he allegedly engaged in "unprofessional communication", Ms. Arpino could not provide any examples.

44.  Plaintiff was immediately locked out of his work computer and work email following the announcement of his termination. Plaintiff was also locked out of his ADP account which was his only means of accessing his previous pay statements and other relevant information in order to file for unemployment.

45.  The Trevor Project did not provide Plaintiff with his final paycheck.

46.  The Trevor project also refused to provide Plaintiff with his personnel file within 30 days of his request.

## **FIRST CAUSE OF ACTION**

### **Sex Discrimination- Cal Govt. Code § 12940 *et seq*.**

#### **(As to all Defendants)**

47.  Plaintiff incorporates by reference the factual allegations in paragraphs 1 through 46 above.

48.  Plaintiff is informed and believes and thereon alleges that The Trevor Project, by and through its agents and management level employees discriminated against him on the basis of his sex in violation of California Gov't Code § 12940 *et seq*.

49.  Plaintiff is a man and a member of a protected class.

COMPLAINT FOR DAMAGES

50.  As set forth above, Plaintiff is informed and believes Defendants engaged in illegal, intentional discrimination by terminating Plaintiff on the basis of his sex, by subjecting him to a hostile work environment on the basis of his sex, and by failing to promote him on the basis of his sex.

51.  Negative comments regarding men were repeatedly made to Plaintiff, causing him to feel unwelcome at work. A reasonable person in Plaintiff's position would have considered the work environment to be hostile as a result of such comments.

52.  Plaintiff consistently received positive feedback regarding his performance. Furthermore, Defendants could not provide any examples of when Plaintiff engaged in "unprofessional communication", the alleged legitimate reason for his termination.

53.  Plaintiff is further informed and believes that the individual who replaced him after he was terminated, and the individual who received the Crisis Services Manager of Lifeline Counselors position were both non-male.

54.  It further appears that the elimination of Plaintiff's position and his lack of promotion was part of a larger pattern of discrimination against men within The Trevor Project, as evidenced by the other men who were terminated around the same time as Plaintiff and who were similarly denied promotions.

55.  As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer special damages in the form of lost earnings and benefits in an amount according to proof at the time of trial. As a further direct and proximate result of Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount according to proof at the time of trial.

COMPLAINT FOR DAMAGES

56.  As a further direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered emotional distress, humiliation, shame, and embarrassment all to Plaintiff's damage in an amount to proven at time of trial.

57.  Plaintiff is informed and believes and thereon alleges that Defendants' acts herein were malicious, oppressive, despicable, and in conscious disregard of the Plaintiff's rights. As such, punitive damages are warranted against Defendants in order to punish them and make an example of their actions.

58.  Plaintiff duly filed an administrative charge with the Department of Fair Employment and Housing (hereinafter "DFEH") and Equal Employment Opportunity Commission (hereinafter "EEOC"). DFEH has issued a notice of right to sue thereon authorizing Plaintiff to initiate a civil action against Defendants.  Plaintiff has exhausted all of his administrative remedies herein, and this action has been timely filed.

## SECOND CAUSE OF ACTION

### Sex Discrimination- Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

### (As to all Defendants)

59.  Plaintiff incorporates by reference the factual allegations in paragraphs 1 through 58 above.

60.  Plaintiff is informed and believes and thereon alleges that The Trevor Project, by and through its agents and management level employees discriminated against him on the basis of his sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

61.  Plaintiff is a heterosexual man and a member of a protected class.

62.  As set forth above, Plaintiff is informed and believes Defendants engaged in illegal, intentional discrimination by terminating Plaintiff on the basis of his sex, by subjecting him to a

COMPLAINT FOR DAMAGES

hostile work environment on the basis of his sex, and by failing to promote him on the basis of his sex.

63.   Negative comments regarding men and heterosexual men were repeatedly made to Plaintiff, causing him to feel unwelcome at work. A reasonable person in Plaintiff's position would have considered the work environment to be hostile as a result of such comments.

64.   Plaintiff consistently received positive feedback regarding his performance. Furthermore, Defendants could not provide any examples of when Plaintiff engaged in "unprofessional communication", the alleged legitimate reason for his termination.

65.   Plaintiff is further informed and believes that the individual who replaced him after he was terminated, and the individual who received the Crisis Services Manager of Lifeline Counselors position were both non-male and non-heterosexual.

66.   It further appears that the elimination of Plaintiff's position and his lack of promotion was part of a larger pattern of discrimination against men within The Trevor Project, as evidenced by the other men who were terminated around the same time as Plaintiff and who were similarly denied promotions.

67.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer special damages in the form of lost earnings and benefits in an amount according to proof at the time of trial. As a further direct and proximate result of Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount according to proof at the time of trial.

68.   As a further direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered emotional distress, humiliation, shame, and embarrassment all to Plaintiff's damage in an amount to proven at time of trial.

COMPLAINT FOR DAMAGES

69.  Plaintiff is informed and believes and thereon alleges that Defendants' acts herein were malicious, oppressive, despicable, and in conscious disregard of the Plaintiff's rights. As such, punitive damages are warranted against Defendants in order to punish them and make an example of their actions.

70.  Plaintiff duly filed an administrative charge with the Department of Fair Employment and Housing (hereinafter "DFEH") and Equal Employment Opportunity Commission (hereinafter "EEOC"). DFEH has issued a notice of right to sue thereon authorizing Plaintiff to initiate a civil action against Defendants.  Plaintiff has exhausted all of his administrative remedies herein, and this action has been timely filed.

## THIRD CAUSE OF ACTION

### Race Discrimination—Cal Govt. Code § 12940 *et seq.*

**(As to all Defendants)**

71.  Plaintiff incorporates by reference the factual allegations in paragraphs 1 through 70 above.

72.  Plaintiff is informed and believes and thereon alleges that The Trevor Project, by and through its agents and management level employees discriminated against him on the basis of his race in violation of California Gov't Code § 12940 *et seq.*

73.  Plaintiff is a Caucasian man and a member of a protected class.

74.  As set forth above, Plaintiff is informed and believes Defendants engaged in illegal, intentional discrimination by terminating Plaintiff on the basis of his race, by subjecting him to a hostile work environment on the basis of his race, and by failing to promote him on the basis of his race.

COMPLAINT FOR DAMAGES

75. Negative comments regarding white people were repeatedly made to Plaintiff, causing him to feel unwelcome at work. A reasonable person in Plaintiff's position would have considered the work environment to be hostile as a result of such comments.

76. Plaintiff consistently received positive feedback regarding his performance. Furthermore, Defendants could not provide any examples of when Plaintiff engaged in "unprofessional communication", the alleged legitimate reason for his termination.

77. Plaintiff is further informed and believes that the individual who replaced him after he was terminated, and the individual who received the Crisis Services Manager of Lifeline Counselors position were both non-white.

78. It further appears that the elimination of Plaintiff's position and his lack of promotion was part of a larger pattern of discrimination against white individuals within The Trevor Project, as evidenced by the other white individuals who were terminated around the same time as Plaintiff and who were similarly denied promotions.

79. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer special damages in the form of lost earnings and benefits in an amount according to proof at the time of trial. As a further direct and proximate result of Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount according to proof at the time of trial.

80. As a further direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered emotional distress, humiliation, shame, and embarrassment all to Plaintiff's damage in an amount to proven at time of trial.

81. Plaintiff is informed and believes and thereon alleges that Defendants' acts herein were malicious, oppressive, despicable, and in conscious disregard of the Plaintiff's rights. As such,

14

COMPLAINT FOR DAMAGES

1    punitive damages are warranted against Defendants in order to punish them and make an
2    example of their actions.
3         82.  Plaintiff duly filed an administrative charge with the Department of Fair Employment
4    and Housing (hereinafter "DFEH") and Equal Employment Opportunity Commission
5    (hereinafter "EEOC"). DFEH has issued a notice of right to sue thereon authorizing Plaintiff to
6    initiate a civil action against Defendants.  Plaintiff has exhausted all of his administrative
7    remedies herein, and this action has been timely filed.
8
9                            **FOURTH CAUSE OF ACTION**
10   **Race Discrimination—Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e _et seq._**
11                           **(As to all Defendants)**
12        83.  Plaintiff incorporates by reference the factual allegations in paragraphs 1 through 82
13   above.
14        84.  Plaintiff is informed and believes and thereon alleges that The Trevor Project, by and
15   through its agents and management level employees discriminated against him on the basis of his
16   race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e _et seq_.
17        85.  Plaintiff is a Caucasian man and a member of a protected class.
18        86.  As set forth above, Plaintiff is informed and believes Defendants engaged in illegal,
19   intentional discrimination by terminating Plaintiff on the basis of his race, by subjecting him to a
20   hostile work environment on the basis of his race, and by failing to promote him on the basis of
21   his race.
22        87.  Negative comments regarding white people were repeatedly made to Plaintiff, causing
23   him to feel unwelcome at work. A reasonable person in Plaintiff's position would have considered
24   the work environment to be hostile as a result of such comments.
25
26
27
28

COMPLAINT FOR DAMAGES

88.  Plaintiff consistently received positive feedback regarding his performance. Furthermore, Defendants could not provide any examples of when Plaintiff engaged in "unprofessional communication", the alleged legitimate reason for his termination.

89.  Plaintiff is further informed and believes that the individual who replaced him after he was terminated, and the individual who received the Crisis Services Manager of Lifeline Counselors position were both non-white.

90.  It further appears that the elimination of Plaintiff's position and his lack of promotion was part of a larger pattern of discrimination against white individuals within The Trevor Project, as evidenced by the other white individuals who were terminated around the same time as Plaintiff and who were similarly denied promotions.

91.  As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer special damages in the form of lost earnings and benefits in an amount according to proof at the time of trial. As a further direct and proximate result of Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount according to proof at the time of trial.

92.  As a further direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered emotional distress, humiliation, shame, and embarrassment all to Plaintiff's damage in an amount to proven at time of trial.

93.  Plaintiff is informed and believes and thereon alleges that Defendants' acts herein were malicious, oppressive, despicable, and in conscious disregard of the Plaintiff's rights. As such, punitive damages are warranted against Defendants in order to punish them and make an example of their actions.

COMPLAINT FOR DAMAGES

94.   Plaintiff duly filed an administrative charge with the Department of Fair Employment and Housing (hereinafter "DFEH") and Equal Employment Opportunity Commission (hereinafter "EEOC"). DFEH has issued a notice of right to sue thereon authorizing Plaintiff to initiate a civil action against Defendants.  Plaintiff has exhausted all of his administrative remedies herein, and this action has been timely filed.

<u>**FIFTH CAUSE OF ACTION**</u>

<u>**Sexual Orientation Discrimination- Cal Govt. Code § 12940 et seq.**</u>

**(As to all Defendants)**

95.   Plaintiff incorporates by reference the factual allegations in paragraphs 1 through 94 above.

96.   Plaintiff is informed and believes and thereon alleges that The Trevor Project, by and through its agents and management level employees discriminated against him on the basis of his sexual orientation in violation of California Gov't Code § 12940 *et seq.*

97.   Plaintiff is a heterosexual man and a member of a protected class.

98.   As set forth above, Plaintiff is informed and believes Defendants engaged in illegal, intentional discrimination by terminating Plaintiff on the basis of his sexual orientation, by subjecting him to a hostile work environment on the basis of his sexual orientation, and by failing to promote him on the basis of his sexual orientation.

99.   Negative comments regarding heterosexual people were repeatedly made to Plaintiff, causing him to feel unwelcome at work. A reasonable person in Plaintiff's position would have considered the work environment to be hostile as a result of such comments.

100.   Plaintiff consistently received positive feedback regarding his performance. Furthermore, Defendants could not provide any examples of when Plaintiff engaged in "unprofessional communication", the alleged legitimate reason for his termination.

COMPLAINT FOR DAMAGES

101.   Plaintiff is further informed and believes that the individual who replaced him after he was terminated, and the individual who received the Crisis Services Manager of Lifeline Counselors position were both non-heterosexual.

102.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer special damages in the form of lost earnings and benefits in an amount according to proof at the time of trial. As a further direct and proximate result of Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount according to proof at the time of trial.

103.   As a further direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered emotional distress, humiliation, shame, and embarrassment all to Plaintiff's damage in an amount to proven at time of trial.

104.   Plaintiff is informed and believes and thereon alleges that Defendants' acts herein were malicious, oppressive, despicable, and in conscious disregard of the Plaintiff's rights. As such, punitive damages are warranted against Defendants in order to punish them and make an example of their actions.

105.   Plaintiff duly filed an administrative charge with the Department of Fair Employment and Housing (hereinafter "DFEH") and Equal Employment Opportunity Commission (hereinafter "EEOC"). DFEH has issued a notice of right to sue thereon authorizing Plaintiff to initiate a civil action against Defendants.  Plaintiff has exhausted all of his administrative remedies herein, and this action has been timely filed.

COMPLAINT FOR DAMAGES

## SIXTH CAUSE OF ACTION

### Wrongful Termination in Violation of Public Policy

### (As to all Defendants)

106.   Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1 through 105.

107.   It is the clearly established public policy of the State of California that employees be free from sex discrimination, race discrimination, and sexual orientation discrimination under California Constitution, Article I, Section 8.

108.   California Government Code § 12940 *et seq*. sets forth the public policy which prohibits employers from discriminating against employees based on their sex, race, or sexual orientation.

109.   Defendants wrongfully terminated Plaintiff in violation of public policies of the State of California.

110.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer special damages in the form of lost earnings, benefits, and/or out of pocket expenses in an amount according to proof at the time of trial. As a further direct and proximate result of these Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount according to proof at the time of trial.

111.   As a direct, foreseeable and proximate result of Defendants' conduct, Plaintiff has suffered from mental and emotional distress, and discomfort, all to detriment and damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

112.   Plaintiff is informed and believes and thereon alleges that Defendants acts alleged herein are malicious, oppressive, despicable, and in conscious disregard of the Plaintiffs rights. As such, punitive damages are warranted against Defendants in order to punish them and make an example of their actions.

## SEVENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

**(As to all Defendants)**

113.   Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1 through 112.

114.   Defendants' discrimination against Plaintiff on the basis of his sex, race, and sexual orientation, as well as their retaliation against and wrongful termination of Plaintiff was extreme and outrageous conduct.

115.   Defendants' conduct was in fact a proximate cause of severe emotional distress for Plaintiff, which includes but is not limited to, depression, anxiety, stress and insomnia.

116.   As such, Plaintiff is entitled to recover for all damages proximately caused by Defendants' intentional infliction of emotional distress, including but not limited to, general and special damages.

117.   Plaintiff is informed and believes and thereon alleges that Defendants' acts herein were malicious, oppressive, despicable, and in conscious disregard of the Plaintiff's rights. As such, punitive damages are warranted against Defendants in order to punish them and make an example of their actions.

COMPLAINT FOR DAMAGES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### EIGTH CAUSE OF ACTION

### Retaliation—Cal Govt. Code § 12940 *et seq*.

### (As to all Defendants)

118.  Plaintiff incorporates by reference the factual allegations in paragraphs 1 through 117 above.

119.  Under FEHA, it is unlawful to retaliate against an employee for opposing practices which are made unlawful under that act.

120.  As stated above, Plaintiff on or about September 21, 2020 submitted a document to Sam Arpino detailing examples of discrimination enacted through the workplace bullying he had been subjected to, including but not limited to exaggerated criticism, gaslighting, intimidation, and abuses of power by Director of Lifeline Department Danielle Ehsanipour.  Approximately one month later, Plaintiff interviewed for a promotion which he did not receive.  Less than two months later, Plaintiff was terminated. The alleged reason for Plaintiff's termination was that Plaintiff engaged in "unprofessional communication." However, when Plaintiff asked for an example of when he engaged in such conduct, Defendants could provide none. Plaintiff is informed and believes that the above-described adverse employment actions were in retaliation for his complaint of sex, race, and sexual orientation discrimination.

121.  At all relevant times, Defendants had actual and constructive knowledge of the retaliatory conduct described and alleged herein, and condoned, ratified and participated in the retaliation.  As a result of the retaliatory behavior perpetrated and executed by Defendants, and Defendants' failure to protect Plaintiff from retaliatory behavior, Plaintiff has suffered special damages in the form of lost earnings and benefits and has suffered and will continue to suffer mental distress, anguish, and indignation.  As a further direct and proximate result of Defendants'

COMPLAINT FOR DAMAGES

conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount according to proof at the time of trial.

122. Plaintiff duly filed an administrative charge with the Department of Fair Employment and Housing (hereinafter "DFEH") and Equal Employment Opportunity Commission (hereinafter "EEOC"). DFEH has issued a notice of right to sue thereon authorizing Plaintiff to initiate a civil action against Defendants. Plaintiff has exhausted all of his administrative remedies herein, and this action has been timely filed.

## NINTH CAUSE OF ACTION

### Retaliation—Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

### (As to all Defendants)

123. Plaintiff incorporates by reference the factual allegations in paragraphs 1 through 122 above.

124. Under Title VII, it is unlawful to retaliate against an employee for opposing practices which are made unlawful under that act.

125. As stated above, Plaintiff on or about September 21, 2020 submitted a document to Sam Arpino detailing examples of discrimination enacted through the workplace bullying he had been subjected to, including but not limited to exaggerated criticism, gaslighting, intimidation, and abuses of power by Director of Lifeline Department Danielle Ehsanipour. Approximately one month later, Plaintiff interviewed for a promotion which he did not receive. Less than two months later, Plaintiff was terminated. The alleged reason for Plaintiff's termination was that Plaintiff engaged in "unprofessional communication." However, when Plaintiff asked for an example of when he engaged in such conduct, Defendants could provide none. Plaintiff is informed and believes that the above-described adverse employment actions were in retaliation for his complaint of sex and race discrimination.

COMPLAINT FOR DAMAGES

126.   At all relevant times, Defendants had actual and constructive knowledge of the retaliatory conduct described and alleged herein, and condoned, ratified and participated in the retaliation.   As a result of the retaliatory behavior perpetrated and executed by Defendants, and Defendants' failure to protect Plaintiff from retaliatory behavior, Plaintiff has suffered special damages in the form of lost earnings and benefits and has suffered and will continue to suffer mental distress, anguish, and indignation.   As a further direct and proximate result of Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount according to proof at the time of trial.

127.   Plaintiff duly filed an administrative charge with the Department of Fair Employment and Housing (hereinafter "DFEH") and Equal Employment Opportunity Commission (hereinafter "EEOC"). DFEH has issued a notice of right to sue thereon authorizing Plaintiff to initiate a civil action against Defendants.  Plaintiff has exhausted all of his administrative remedies herein, and this action has been timely filed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1.   For general damages in amounts according to proof;

2.   For special damages in amounts according to proof;

3.   For punitive damages in amounts according to proof;

4.   For attorney's fees as provided by law;

5.   For interest as provided by law;

6.   For costs of suit incurred herein; and

7.   For such other and further relief as the court deems fair and just.

COMPLAINT FOR DAMAGES

Dated: April 21, 2022                     McCOY LAW FIRM, P.C.

                                          **/s/ Waukeen Q. McCoy**

                                          Waukeen Q. McCoy, Esq.
                                          Attorney for Plaintiff,
                                          Zachary Pelle

COMPLAINT FOR DAMAGES